## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |
|---|---|
| JOSEPH IZZO, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.: <u>2:23-cv-02125-BHH</u> |
| v. | **CLASS ACTION COMPLAINT** |
| THE PROCTER & GAMBLE COMPANY, | **<u>JURY TRIAL DEMANDED</u>** |
| Defendant. | |

Plaintiff Joseph Izzo ("Izzo" or "Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for his Complaint against The Procter & Gamble Company ("Procter & Gamble", "P&G", or "Defendant") and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### <u>NATURE OF THE ACTION</u>

1.     Plaintiff brings this class action lawsuit as an individual who purchased P&G dishwasher detergent pods (hereinafter "Products") for normal household use. Unfortunately, the Products are defective because they explode. This explosion results in the spewing of harsh cleaning chemicals contained within the products. This defect, the explosion, has caused injury as the cleaning chemicals contained within the Products are harmful to humans if ingested or applied topically to one's eyes or skin.

2.     The Products were formulated, designed, manufactured, marketed, advertised, distributed, and sold by Defendant P&G. In more detail, these Products include Cascade-branded

dishwasher detergent pacs (including, but not limited to, Cascade Platinum ActionPacs). Each of the Products is manufactured, distributed, marketed, and sold by P&G to consumers across the United States. The Products are sold both in retail establishments and online, including stores within this District.

3.    The Product is defective because each individual detergent pod has the potential to explode, spewing the contents (highly concentrated chemical cleaning agents which) into the air which increases the risk of encountering skin or eyes, which is extremely dangerous. Despite this known explosion and spewing risk, P&G represented that the Products are safe and effective for their intended use.

4.    Other manufacturers formulate, produce, and sell non-defective dishwashing detergent pods with formulations that do not cause the packaging to rupture and explode, which is evidence that this explosion risk inherent with P&G's Products is demonstrably avoidable.

5.    Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

6.    At the time of their purchases, P&G did not notify Plaintiff, and similarly situated consumers, of the Products' risk of exploding through its product labels, the ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal law.

7.    Plaintiff purchased the Product, while lacking the knowledge that Product could explode, thus spewing harmful chemicals.

8.    Because Plaintiff was injured by the Products and all consumers purchased the worthless and dangerous Products, they have suffered losses.

9.    As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## PARTIES

10. Plaintiff Joseph Izzo is a resident and citizen of Mount Pleasant, South Carolina. Mount Pleasant is located within Charleston County, South Carolina.

11. Plaintiff purchased and used the Products in or around January of 2023.

12. Defendant The Procter & Gamble Company is multinational company that has been incorporated under the laws of the State of Ohio since 1905. Defendant's corporate headquarters are located at 1 Procter & Gamble Plaza, Cincinnati, OH 45202.

13. Defendant P&G manufactures, distributes, markets, and sells many types of cleaning products, including the Cascade products at hand.

14. Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the claims alleged herein was primarily carried out at P&G's headquarters and facilities within Ohio.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because they purposely availed themselves of the laws of the

United States and South Carolina and has caused its products to be disseminated in this District.

18.    Venue in this District and Court is proper pursuant to 28 U.S.C. §1391(b) because Plaintiff Joseph Izzo resides in this District, a substantial part of the conduct or omissions giving rise to Plaintiff's claims occurred in this District, P&G transacts business in this District, and Defendant P&G has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

19.    P&G is a well-established corporation known for its home care products, including the Cascade Platinum ActionPacs at issue here. On its website, it advertises its products as "Iconic brands you can trust in your home."[1]

20.    P&G markets itself, and its products, as the "#1 brand recommended in North America."[2]

21.    P&G built its strong reputation and consumer trust for more than a century by manufacturing and selling brands that have typically been of high quality and, as a result, P&G generates billions of dollars in annual revenue.

### The Products

22.    The Cascade ActionPac Products at issue in this lawsuit are single-use, prepackaged dishwasher detergent pods used by consumers, including Plaintiff Izzo and similarly situated consumers, to clean dishes and other common kitchen utensils and items.

23.    In more detail, these pods are plastic rectangular prisms containing detergent, similar to the ones as seen below[3]:

---

[1] https://us.pg.com/brands/ (last viewed April 25, 2023).
[2] https://cascadeclean.com/en-us/products/cascade-platinum-actionpacs-lemon-scent/ (last viewed April 25, 2023).
[3] https://www.jerrysdoit.com/shop/cleaning-supplies/cleaning-chemicals/dish-washing-detergent/dishwasher-detergent/cascade-platinum-action-pacs-fresh-dishwasher-detergent-tabs-14-ct?SKU=637721



### P&G's Misrepresentations and Omissions are Actionable

24.    Plaintiff bargained for a dishwasher detergent product that was safe to use. Defendant's explosion prone Products were and are unsafe, given the fact that the explosion leads to dangerous chemical exposure. As a result of the explosion and exposure, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that Defendant sold them a product containing highly concentrated cleaning agents that could rupture and explode without warning. This dangerous explosion risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

25.    The Products are not fit for their intended use by humans as they expose consumers to dangerous highly concentrated chemical agents. Plaintiff is further entitled to damages for the injury sustained in being exposed to toxic chemical agents, damages related to Defendant's conduct, and injunctive relief.

26.    Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the risk of explosion.  This explosion releases harmful chemicals into the air and onto the surrounding surfaces which greatly increases the risk of contact with skin and/or eyes.

27.    Plaintiff suffered personal injury damages due to Defendant's misconduct (as set forth below), and he seeks relief and restitution for personal injury damages incurred as a result of usage of the Product he purchased from Defendant.  Plaintiff alleges the following based on personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

28.    P&G engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of explosion affecting the Products.

29.    Plaintiff has suffered injury in fact and has lost money as a result of P&G's unlawful sale of the Products. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of explosion.

30.    Furthermore, Plaintiff's use of the Product has resulted in him being hospitalized due to harsh chemicals contacting his eye. Accordingly, Plaintiff suffered injury in fact, incurred pain and suffering, and loss of earnings as a result of P&G's insufficient warning of the risks associated with the Products.

31.    Plaintiff's injury is underscored by the fact that numerous other products offering the same benefit at comparable prices exist and these products are not prone to explosion resulting in human exposure to dangerous chemicals.

32.    Plaintiff, and all others similarly situated, may be harmed again in the future because they may want to purchase the Products in the future. If injunctive relief is not granted, the Plaintiff, as well as all consumers, would lack the ability to ascertain or have confidence in P&G's truthful and lawful labeling of the Products, and there would be a high probability of being deceived once more.

## PLAINTIFF'S FACTUAL ALLEGATIONS

33.    Plaintiff Joseph Izzo bought Cascade Platinum ActionPacs dishwasher detergent pods (UPC Code 037000807049) for personal household use near his residence in Mount Pleasant, South Carolina.

34.    On January 15th, 2023, Plaintiff Joseph Izzo was loading the dishwasher and placed a

dishwasher pod (Cascade Platinum ActionPacs) in the pre-wash tray.

35.    When Plaintiff Izzo attempted to close the dishwasher, the pod exploded. This explosion resulted in the Product spewing highly concentrated chemical cleaning agents into the air and, ultimately, into Plaintiff's left eye. This explosion and exposure caused Plaintiff great pain.

36.    Plaintiff Izzo attempted to rinse his eyes in the sink, and he alerted his wife to what happened.

37.    Plaintiff rinsed his eyes with water for ten minutes as instructed by the product's package. If anything, this inclusion of instructions demonstrates that Defendants were aware of the risk of chemical exposure and possible eye contamination as the Products were self-contained dishwasher fluid packs, and without rupture, it would be impossible for the fluid to get into a user's eye.

38.    Even after rinsing his eyes as instructed by Defendant's packaging, Plaintiff's eye was still in great pain.

39.    Seeing no end to this pain, Plaintiff was taken to the Roper Mount Pleasant Hospital by his wife and remained there for roughly 5 hours.

40.    Plaintiff's left eye was constantly flushed as he laid on the hospital bed in pain. This flushing required the uncomfortable insertion of a tube into Plaintiff's eye.

41.    After four liters of saline were flushed into Plaintiff's eye, Plaintiff's eye was examined, and lesions were discovered. As a result of these lesions and pain, Plaintiff was referred to the Storm Eye Institute at The Medical University of South Carolina (hereinafter "MUSC") to be seen.

42.    Plaintiff was transferred to the Storm Eye Institute where he was diagnosed with chemical burns within the eye. These burns were caused by the exposure to cleaning chemicals.

43.    Plaintiff was subjected to numerous diagnostic tests, and after these tests, Plaintiff was provided three different types of ophthalmic eyedrops to improve his condition.

44.    Even after these numerous examinations, Plaintiff was required to follow-up with the Storm Eye Institute at MUSC. Plaintiff scheduled a visit for January 18, 2023, and was seen by Dr. Eliza Barnwell of Storm Eye Institute at MUSC.

45.    At this follow up visit, Plaintiff was diagnosed with 25% stem cell death surrounding the cornea, chemical burn of the cornea, and lesions within the cornea itself.

46.    Plaintiff's next follow up visit was on January 24, 2023.

47.    Plaintiff has suffered continues to suffer blurred vision and extreme sensitivity to light as a result of the Products' explosion. Storm Eye Institute has indicated that Plaintiff's injuries and conditions have no clear path for resolution. To be clear, Plaintiff's doctors cannot predict that Plaintiff will return to his pre-injury condition or give a timeline for such recovery.

48.    Nowhere on the Products' packaging did P&G disclose that the Products could explode and blast chemicals.

49.    If Plaintiff Joseph Izzo had been aware of the risk of explosion in the Products, he would not have purchased the Products or would have paid significantly less.

50.    As a result of P&G's actions, Plaintiff Joseph Izzo has incurred damages, including personal injury and economic damages.

51.    If the Cascade Products and packaging were reformulated to be safe and avoid explosion, and to be safe even after explosion and human exposure, Plaintiff Joseph Izzo would choose to purchase the Products again in the future.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff Izzo brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on his own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Products

within the applicable statute of limitations.

**South Carolina Subclass:** All persons within South Carolina who purchased the Products within the applicable statute of limitations.

53.    The Nationwide Class and South Carolina Subclass shall collectively be referred to herein as the "Classes."

54.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

55.    Excluded from the Classes are governmental entities, P&G, its officers, directors, affiliates, legal representatives, and employees.

56.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

57.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

58.    **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

   a.    whether P&G's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed P&G's Products;

b.      whether P&G made representations regarding the safety of the Products;

c.      whether P&G omitted material information regarding the safety of the Products;

d.      whether P&G's Products were merchantable;

e.      whether P&G violated the consumer protection statutes invoked herein;

f.      whether P&G's conduct alleged herein was fraudulent; and

g.      whether P&G was unjustly enriched by sales of the Products.

59.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of P&G's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

60.     **Typicality** – Federal Rule of Civil Procedure 23(a)(3).  Plaintiff's claims are typical of those of the Class in that the Class members uniformly purchased P&G's Products and were subjected to P&G's uniform merchandising materials and representations at the time of purchase.

61.     **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for P&G, and/or substantially impair or impede the ability of Class members to protect their interests.  In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action.  The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

62.     **Adequacy** – Federal Rule of Civil Procedure 23(a)(4).  Plaintiff is an adequate

representative of the Classes because he is a member of the Classes and his interests do not conflict with the interests of the Classes that he seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

63.     **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while  establishing incompatible standards of conduct for P&G. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

64. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). P&G has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin P&G from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

65. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.     The prosecution of separate actions by individual members of the Classes would

create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the P&G;

b.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  P&G has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

66.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

67.  Plaintiff, and the other members of the Nationwide Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were not gifts or donations, but were given in exchange for the Products.

68.  Defendant voluntarily accepted and retained these benefits.

69.  Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

70.    Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other members of the Nationwide Class, because Plaintiff, and members of the Nationwide Class, purchased mislabeled products that were not what Plaintiff and the Classes bargained for and were not safe and effective, as claimed.

71.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

72.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT II
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

73.    Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

74.    Plaintiff, and each member of the National Class, formed a contract with Defendant at the time they purchased the Products.

75.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising.

76.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the

members of the National Class and Defendant.

77.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

78.     Plaintiff and the members of the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

79.     Defendant breached express warranties relating to the Products and their qualities because Defendant's Product possessed the possibility to explode and cause injury, even when correctly used, at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

80.     Plaintiff and each of the members of the National Class would not have purchased the Products had they known the true nature of the risk of the Product exploding.

81.     As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III

**Breach of Implied Warranty**
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

82.     Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

83.     P&G is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

84.     The Products are "goods" under the relevant laws, and P&G knew or had reason to know of the specific use for which the Products, as goods, were purchased.

85.     P&G entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

86.    The implied warranty of merchantability included with the sale of each Product means that P&G guaranteed that the Products would be fit for the ordinary purposes for which laundry detergent pods are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between P&G, and Plaintiff and the Class Members.

87.    P&G breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe use for cleaning dishes and other kitchen items because the Products have a risk of exploding, spraying highly concentrated chemical cleaners in the process. Therefore, the Products are not fit for their particular purpose of safely cleaning dishes and cookware.

88.    P&G's warranty expressly applies to the purchaser of the Products, creating privity between P&G and Plaintiff and Class Members.

89.    However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of P&G's warranties and its sale through retailers. P&G's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. P&G's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

90.    P&G has been provided sufficient notice of its breaches of implied warranties associated with the Products. P&G was put on constructive notice of its breach through its review of consumer complaints and other reports.

91.    Had Plaintiff, Class Members, and the consuming public known that the Products could explode and spray chemical cleaners, they would not have purchased the Products or would have paid less for them.

92.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

93.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

94.     Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 45 (the "Classes").

95.     Defendants are merchants engaging in the sale of goods to Plaintiff and the Classes.

96.     There was a sale of goods from Defendants to Plaintiff and the Classes.

97.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendants impliedly warranted to Plaintiff and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiff and the Classes to use as dishwasher detergent.

98.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendants' affirmations of fact and promises as use of the Products was accompanied by the risk of adverse health effects that do not conform to the packaging.

99.     Defendants breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiff and the Classes a product that Defendants knew would expose Plaintiff and the Classes to significant health risks, thus meaning Defendants knew that the Products were not fit for their intended purpose.

100.    Defendants were on notice of this breach, as they were made aware of the adverse health effects caused my contact with these highly concentrated chemical cleaners that can result from the use of their Products.

101.    Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

102.    Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

103.    The Products were not altered by Plaintiff or the members of the Classes.

104.    Plaintiff and members of the Classes used the Products in the ordinary manner in which such devices were intended to be used.

105.    The Products were defective when they left the exclusive control of Defendant.

106.    The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Classes did not receive the goods that they bargained for.

107.    Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

108.    As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

109.    Defendants breached the implied warranty of merchantability to the Plaintiff and Class members.

110. Thus, Defendants' attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

111. Plaintiff and Class members have been damaged by Defendants' breach of the implied warranties.

112. Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT V
### Fraudulent Concealment
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

113. Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

114. Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 45 (the "Classes").

115. Defendant had a duty to disclose material facts to Plaintiff and the Classes given their relationship as contracting parties and intended users of the Products. Defendant also had a duty to disclose material facts to Plaintiff and the Classes, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

116. During this time, Plaintiff, and members of the Classes, were using the Products without knowing they could explode and spew highly concentrated chemical cleaning agents into the air.

117. Defendant failed to discharge its duty to disclose these materials facts.

118. In so failing to disclose these material facts to Plaintiff and the Classes, Defendant

intended to hide from Plaintiff and the Classes that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

119.    Plaintiff and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of explosion.

120.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Products.

121.    As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

<u>**COUNT VI**</u>
**Strict Liability – Failure to Warn**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

122.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

123.    Defendants had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the Products.

124.    Defendants were in a superior position to know of the Defect, yet, as outlined above, chose to do nothing when the defect became known to them.

125.    Defendants failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

126.    Defendants had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

127.    Despite their knowledge of the Defect and obligation to unilaterally strengthen the

warnings, Defendants instead chose to actively conceal this knowledge from the public.

128.    Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

129.    This Defect proximately caused Plaintiff's and Class members' damages.

130.    The Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
### Strict Liability – Design Defect
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

131.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

132.    Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 45 (the "Classes").

133.    The design of the Products was defective and unreasonably dangerous.

134.    The risk of exploding while Plaintiff and members of the Classes used the Products, caused exposure to materials with toxic effects.

135.    The design of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

136.    The risk of explosion and contact with highly concentrated chemical cleaning agents in the Products outweighed the benefits and rendered the Products unreasonably dangerous.

137.    There are other Products and other similar dishwasher detergent pods that do not explode, meaning that there were other means of production available to Defendants.

138.   The Products were unreasonably unsafe, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

139.   The Products did not perform as an ordinary consumer would expect.

140.   Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VIII
**Negligent Failure to Warn**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

141.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

142.   Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 45 (the "Classes").

143.   Defendants owed Plaintiff and Class members a duty of care and to warn of any risks associated with the Products.

144.   Defendants knew or should have known of the defect but failed to warn Plaintiff and members of the Classes.

145.   Plaintiff had no way of knowing of the Product's latent defect as an ordinary consumer would be unable to discover the Product could explode.

146.   Defendants' breach of duty caused Plaintiff and Class members economic damages and injuries in the form of exposure to highly concentrated chemical cleaning agents, materials with toxic effects.

147.   Plaintiff and Class members have suffered damages in an amount to be determined at

trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT IX
### Negligent Design Defect
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

148.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

149.    Plaintiff brings this claim against Defendant, on behalf of himself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 45 (the "Classes").

150.    Defendant owed Plaintiff and the Classes a duty to design the Products in a reasonable manner.

151.    The design of the Products was defective and unreasonably dangerous, causing exposure to materials with toxic effects.

152.    The design of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

153.    There are other dishwasher detergent pods that do not explode.

154.    The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

155.    The Products did not perform as an ordinary consumer would expect.

156.    The Defendants' negligent design of the Products was the proximate cause of damages to the Plaintiff and the Class members.

157.    Plaintiff and Class members have suffered damages in an amount to be determined at

trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT X
### Negligence

158.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

159.    Defendant owed a duty to consumers to produce a product that was safe for its intended use.

160.    Defendant breached this duty by producing a product that was dangerous for its intended use. Defendant knew or should have known that the harsh cleaning solution contained within the Products and/or the plastic container containing the solutions was at risk of exploding and/or causing injuries once exposed to humans.

161.    As a direct result of this breach, Plaintiff suffered injury. Plaintiff's injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

162.    Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that a poorly designed plastic package containing harsh cleaning solutions would cause injury if exploded.

163.    Plaintiff suffered damages in an amount to be determined at trial and Plaintiff is entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in his favor and against Defendant as follows:

A.      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.      For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: May 18, 2023                              Respectful Submitted,

*/s/ Paul Doolittle*
Paul Doolittle (Fed ID #6012)
Blake G. Abbott (Fed ID #13354)
**POULIN | WILLEY |
ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: pauld@akimlawfirm.com
          blake@akimlawfirm.com